UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| ALBINA G. LUMETTA,<br><br>Appellant,<br><br>v.<br><br>ARBORLAKE HOMEOWNERS ASSOCIATION,<br><br>Appellee. | Case No.: 16cv1817- AJB (JLB)<br><br>**ORDER AFFIRMING THE BANKRUPTCY COURT'S RULING** |
|---|---|

Appellant Albina G. Lumetta ("Lumetta") appeals the United States Bankruptcy Court's Order denying her Application for an Order to Show Cause ("OSC"). (Doc. No. 1.) Lumetta contends that Appellee Arborlake Homeowners Association's ("AHA") affirmative action of sending out a case management conference letter after Lumetta's debts had been discharged is a willful violation of the discharge injunction. (*See generally* Doc. No. 33.) Specifically, on appeal, Lumetta asserts that AHA had an unqualified duty to dismiss her state court action, an OSC should have been issued, Lumetta had no duty to mitigate her damages, and that it was improper for the bankruptcy court to deny Lumetta discovery. (*Id.*) For the reasons stated more fully below, the Court **AFFIRMS** the bankruptcy court's ruling denying the OSC.

///

## I. BACKGROUND

On January 8, 2014, AHA sued Lumetta and her husband, John Paul Lumetta ("Mr. Lumetta"), in San Diego County Superior Court (the "State Court Action") for numerous causes of action and seeking damages for delinquent monthly assessments, late charges, pre-judgment interest, and attorney's fees and costs. (Doc. No. 3-1 at 328; Doc. No. 33 at 4; Doc. No. 39 at 9.)[1] On August 25, 2014, Lumetta retained Doan Law Firm ("Doan") to file for Chapter 7 relief. (Doc. No. 3-1 at 328; Doc. No. 33 at 4.) Thereafter, on September 4, 2014, Doan sent AHA a cease and desist order indicating that Lumetta would soon be seeking bankruptcy protection. (Doc. No. 3-1 at 130.) AHA responded to the cease and desist letter via email on September 12, 2014. (Doc. No. 33 at 4.)

Lumetta then filed her Chapter 7 petition, without her husband as a co-debtor, on October 31, 2014. (Doc. No. 3-1 at 9.) AHA received notice of the bankruptcy filing on November 5, 2014. (*Id*. at 138.) Two days later, AHA filed a notice of stay of proceedings as to Lumetta in the State Court Action. (*Id*. at 228.)

On January 9, 2015, the state court held a trial readiness conference in which it indicated that because Lumetta and Mr. Lumetta were married, it wished to stay the entire action as to both of them. (*Id*. at 142, 148-150, 328.) Accordingly, AHA then filed a second notice of stay of proceedings as to the entire case on January 14, 2015. (*Id*. at 226.) Despite the second stay, Lumetta continued to receive various state court documents between January 9, 2015, and January 21, 2015. (*Id*. at 328.) Lumetta's bankruptcy then continued to follow its normal course with discharge entered on February 9, 2015. (*Id.* at 80.)

On March 11, 2015, AHA, through its attorney Elizabeth Call[2] ("Ms. Call"), filed a Notice of Termination or Modification of Stay (the "Notice of Termination") in the superior court. (*Id*. at 158; Doc. No. 41-1 at 9.) Ms. Call signed this notice as the

---

[1] Pinpoint cites are in reference to the CM/ECF page number and not the number listed on the original document.

[2] Ms. Call is no longer employed at Green, Bryant & French, LLP the firm that represented AHA. (Doc. No. 3-1 at 330-331.)

"declarant" and under penalty of perjury. (*Id*.) Moreover, under question three, Ms. Call stated that the January 14, 2015 notice was vacated by the order of another court. (*Id*.) Additionally, under question five, Ms. Call represented that the stay had been vacated, was no longer in effect, or was modified with regard to all parties. (*Id*.) Lastly, the Notice of Termination included a printout from Lumetta's bankruptcy docket showing that her debts were discharged. (Doc. No. 3-1 at 257.)

On July 10, 2015, Ms. Call attended a status conference. (Doc. No. 33 at 6; Doc. No. 39 at 9.) Neither Lumetta nor Mr. Lumetta attended. (Doc. No. 39 at 9.) During this status conference, AHA contends that Ms. Call told Judge Timothy Taylor that Lumetta's discharge had been entered.[3] (*Id.*; Doc. No. 3-1 at 259-60.) Judge Taylor then continued the case status conference to August 21, 2015, and ruled that if Lumetta and Mr. Lumetta did not appear at the continued status conference that their answers would be striken. (Doc. No. 3-1 at 239.) Judge Taylor then ordered Ms. Call to serve a notice of his ruling on Lumetta. (*Id*. at 239, 260.)

Lumetta received the Notice of Case Management Conference statement (the "Notice of CMC") on July 13, 2015.[4] (*Id*. at 160-61.) The letter stated that: (1) a status conference was held on July 10, 2015; (2) there was no appearance by Lumetta or Mr. Lumetta; (3) a case management conference was set for August 21, 2015; (4) the stay would be lifted; and (5) if Lumetta and Mr. Lumetta failed to appear that their answers would be striken and AHA would be permitted to enter default against them both. (*Id*.)

After receiving these notices, Lumetta contacted Doan on July 15, 2015. (Doc. No. 33 at 7.) Attorney Michael Doan, who was out of the country at the time, tried to assure Lumetta that the lawsuit was not proper. (*Id*.) Doan then contacted AHA on August 7, 2015, and demanded that they dismiss the State Court Action. (*Id*.) AHA responded electronically on August 10, 2015, and filed the dismissal on the same day. (Doc. No. 3-1

---

[3] Lumetta argues that there is no transcript of this status conference other than the minute order. (Doc. No. 33 at 6.)
[4] Lumetta mistakenly states that the Notice of CMC was received on July 13, <u>2017</u>. (*Id*. at 7.)

at 329; Doc. No. 41-1 at 21-23.) The state court did not enter the dismissal until August 11, 2015, and Doan and Lumetta received notice of the dismissal on August 28, 2015. (Doc. No. 3-1 at 329.)

On August 26, 2015, Lumetta applied for an OSC with the bankruptcy court to determine why AHA should not be held in contempt for violating the discharge injunction. (*Id*. at 84-85.) Lumetta asserts that as a result of AHA's failure to immediately dismiss the State Court Action with prejudice, she ended up receiving: (1) numerous documents from state court; and (2) the Notice of CMC. (*Id*. at 86-90; Doc. No. 33 at 8.) This then allegedly caused Lumetta a variety of damages including: (1) actual damages for emotional distress, aggravation, exam resetting, delayed employment, and wasted time working on the lawsuit; (2) lost wages; (3) medical expenses; (4) damages similar to those recoverable in an action under the Rosenthal Fair Debt Collection Practices Act; and (5) attorney's fees and costs. (Doc. No. 3-1 at 90-93.)

On October 5, 2015, after the bankruptcy court heard initial arguments on this matter, it issued a tentative ruling stating that it was inclined to grant the OSC and requested that both parties attend the hearing to discuss the deadlines for submitting evidence and briefing on the matter. (*Id*. at 193.) On December 23, 2015, the bankruptcy court requested additional briefing from both parties. (Doc. No. 33 at 9.) On February 24, 2016, the bankruptcy court continued the matter until the testimony of Ms. Call could be taken. (Doc. No. 3-1 at 241.)

On March 17, 2016, Ms. Call testified that she served the Notice of CMC at the state court's request. (*Id*. at 261; Doc. No. 43 at 13.) Specifically, Ms. Call stated that she was not in the practice of challenging a state court judge's direct order. (Doc. No. 3-1 at 263.) Nor was it Ms. Call's custom to reengage Judge Taylor and correct him in regards to his rulings. (*Id*.) After Ms. Call's testimony, closing arguments were made by both parties and the matter was taken under submission. (*Id*. at 245.)

On June 3, 2016, the bankruptcy court denied Lumetta's application for an OSC even though it agreed that a technical discharge violation was committed. (*Id*. at 338.)

4

16cv1817- AJB (JLB)

Specifically, the bankruptcy court denied Lumetta's application because it found that AHA had satisfied its burden in demonstrating why it was unable to comply with the discharge injunction and that Lumetta failed to mitigate her damages. (*Id.* at 338-339.)

## II. PROCEDURAL BACKGROUND

On July 14, 2016, Lumetta filed a notice of appeal from the bankruptcy appellate panel with this Court. (Doc. No. 1.) On September 3, 2016, AHA filed a motion to dismiss for lack of jurisdiction, (Doc. No. 5), which was denied on February 3, 2017, after the Court requested supplemental briefing. (Doc. Nos. 10, 18.)

On February 13, 2017, Lumetta filed a motion for sanctions, (Doc. No. 20), and on March 10, 2017, filed an objection. (Doc. No. 28.) On March 12, 2017, AHA filed a motion to strike Lumetta's late filed Reply brief to her motion for sanctions. (Doc. No. 30.) On March 23, 2017, Lumetta filed an ex parte motion for extension of time to file her Reply in support of her motion for sanctions. (Doc. No. 35.) On April 19, 2017, the Court denied Lumetta's motion for sanctions, granted AHA's motion to strike, denied Lumetta's ex parte application, and denied AHA's cross-motion for sanctions. (*See generally* Doc. No. 50.) Briefing for this appeal was completed on April 3, 2017. (Doc. No. 45.) This Order follows.

## III. LEGAL STANDARD

### A. Factual Findings are Reviewed Under the Clear Error Standard

"Clear error is the standard under the Federal Rules of Civil Procedure for appellate review of [lower] court findings of fact." *Escobar v. Flores*, 183 Cal. App. 4th 737, 748 (2010). "Clear error exists only when the reviewing court is left with a definite and firm conviction that a mistake has been committed." *Milenbach v. C.I.R.*, 318 F.3d 924, 935 (9th Cir. 2003) (citation omitted). Specifically, under the federal standard, "a finding is clearly erroneous [only] when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Escobar*, 183 Cal. App. 4th at 748. (internal quotation and citation marks omitted).

///

B. De Novo Review

"This Court independently reviews the bankruptcy court's rulings on appeal from the [bankruptcy appellate panel]." *Diamant v. Kaspanan (In re S. Cal. Plastics, Inc.)*, 165 F.3d 1243, 1245 (9th Cir. 1999) (citing *Weisberg v. Shearson Lehman Bros., Inc. (In re Weisberg)*, 136 F.3d 655, 657 (9th Cir. 1988).

## IV. DISCUSSION

On appeal, the crux of Lumetta's argument is that an OSC should have been filed as it was an error to excuse AHA's willful violation of 11 U.S.C. § 524(a)(2)[5] by affirmatively filing the Notice of Termination. (Doc. No. 33 at 2, 5.) Specifically, Lumetta argues in her opening brief that: (1) AHA had an affirmative duty to dismiss the State Court Action; (2) the OSC should have been issued; (3) the bankruptcy court should have allowed discovery; and (4) that Lumetta had no duty to mitigate her damages. (*See generally* Doc. No. 33.) The Court will consider Lumetta's unqualified duty argument first. The Court will then turn to her remaining arguments as the Court's analysis of these contentions is related.

A. Lumetta Did Not Have an Unqualified Duty to Dismiss the State Court Action

Lumetta's initial argument is that cases such as *Eskanos & Adler, P.C. v. Leetien*, 309 F.3d 1210 (9th Cir. 2002) hold that AHA had an affirmative duty to discontinue Lumetta's State Court Action upon discharge. (Doc. No. 33 at 15.) AHA retorts that Lumetta's argument misconstrues the meaning of *Eskanos* and that the bankruptcy court did not err in holding that AHA did not have an affirmative duty to dismiss the State Court Action. (Doc. No. 39 at 11.)

At the outset, the Court notes that the bankruptcy court in its order denying Lumetta's application for an OSC rejected her use of *Eskanos*, noting that the case was

---

[5] Under § 524 a discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect . . . any such debt as a personal liability of the debtor . . . ." 11 U.S.C. § 524(a)(2). "A party who knowingly violates the discharge injunction can be held in contempt under section 105(a) . . . ." *In re Zilog, Inc.*, 450 F.3d 996, 1007 (9th Cir. 2006).

"factually distinguishable and inapposite." (Doc. No. 3-1 at 336.) Moreover, the bankruptcy court disagreed that AHA had an unqualified duty to immediately dismiss the State Court Action. (*Id*. at 337.) Instead, the bankruptcy court held that the only affirmative duty AHA had was to automatically dismiss or stay Lumetta's pending collection action. (*Id*.)

Having reviewed both parties' arguments, the controlling legal authority, as well as the bankruptcy court's previous ruling, the Court finds that the bankruptcy court did not clearly err in making the foregoing determinations. First, the Court notes that Lumetta has mischaracterized the Ninth Circuit's holding in *Eskanos*. In *Eskanos*, a debtor filed for bankruptcy and thereafter her creditor filed in state court a collection action against her. 309 F.3d at 1212. Almost two months later, the creditor dismissed the state collection action. *Id*. In analyzing the situation, bankruptcy Judge Adler stated that 11 U.S.C. § 362(a) was unambiguous in that it "prohibits the continuation of judicial actions," which "includes the maintenance of collection actions filed in state court." *Id*. at 1213. Thus, the court deemed that the creditor's actions including declining to take the debtor's phone calls regarding his bankruptcy filing, refusal to stay the state court action, and failure to explain its delay ultimately violated the automatic stay and thus sanctions were appropriate. *Id*. at 1212, 1215.

Unlike the debtor in *Eskanos*, the present matter does not involve a post-petition collection action against a debtor. Here, AHA first filed suit against Lumetta and her husband in January of 2014. (Doc. No. 3-1 at 103.) Then nearly eight months later, on October 31, 2014, Lumetta filed for Chapter 7 relief. (*Id*. at 1-2.) Next, the Court finds no statement in *Eskanos* that reflects the assertion that there is an affirmative duty to dismiss a state court action upon a debtor's discharge. Instead, the Court agrees with the bankruptcy court and finds that *Eskanos* only held that there is an affirmative duty to either <u>stay or dismiss</u> a debtor's collection action. *Eskanos*, 309 F.3d at 1214. The Court highlights that Lumetta followed this obligation dutifully as it stayed Lumetta's State Court Action two days after it received notice of Lumetta's bankruptcy. Finally, most fatal to Lumetta's

claims is that *Eskanos* only involved an analysis under 11 U.S.C. § 362(a)(1). *Id*. at 1213–14. Whereas, the present matter involves discharge injunctions under 11 U.S.C. § 524(a)(2). Lumetta contends that as § 362 and § 524 are so similar, the Court may still apply the holding in *Eskanos* to this appeal. (Doc. No. 33 at 17-18.) However, Lumetta neglects to provide persuasive legal citations to argue this viewpoint. Accordingly, the Court declines to extend the reasoning in *Eskanos* to the instant action and finds its holding inapplicable to the issues at hand.

Next, the Court finds the cacophony of case law provided by Lumetta to be unpersuasive. Lumetta points to several cases to support the contention that 11 U.S.C. § 524 requires the discontinuation of lawsuits. (Doc. No. 33 at 15.) However, the Court notes that the case excerpts provided by Lumetta in her opening brief fail to reflect this argument. Moreover, the majority of the cases involved post-collection actions that are inapposite to the present matter. For example, the court in *In re Gurrola*, 328 B.R. 158, 171 (B.A.P. 9th Cir. 2005) held that various filings including a letter demanding payment of the debt, the filing of a counterclaim, request for entry of default, and entry of default all violated the automatic stay. In *In re Rhyne*, 59 B.R. 276, 277 (Bankr. E.D. Pa. 1986), the creditors proceeded to state court and obtained a judgment against the debtors after they had filed for Chapter 7 relief. Additionally, in *In re McCool*, 446 B.R. 819, 823 (Bankr. N.D. Ohio 2010), the court held that a creditor's action of sending nine collection notices demanding payment of a debt violated the discharge injunction.

Lastly, Lumetta argues under a section titled "Commission versus Omission" that AHA had to either immediately dismiss the State Court Action or immediately file an additional "Permanent" Notice of Stay. (Doc. No. 33 at 16.) However, this one sentence assertion is neither supported by case law or the record. Thus, the Court is unsure as to whether the alleged failure to file a permanent notice of stay violates the discharge

injunction. Consequently, the Court finds this argument baseless.[6]

Based on the above, the Court finds that the bankruptcy court did not clearly err in concluding that AHA did not have an affirmative duty to immediately dismiss Lumetta's State Court Action upon discharge.

B. <u>Waived Arguments</u>

Pursuant to Federal Rule of Bankruptcy Procedure ("FRBP") 8014(a), the Court deems the remainder of Lumetta's arguments in her opening brief waived. The pertinent parts of Rule 8014 state that "[t]he appellant's brief must contain the argument, which must contain the appellant's contentions . . . with <u>citations to the authorities</u> and <u>parts of the record</u> on which the appellant relies." Fed. R. Bankr. Proc. 8014(a)(8).

i. *Whether the OSC Should Have Been Issued*

The Court first turns to Lumetta's contention that the bankruptcy court erred by declining her application for an OSC. (Doc. No. 33 at 17.) In support of this argument, Lumetta asserts that: (1) she did not consent to delaying the OSC; and (2) an OSC is required by law. (*Id.* at 17-18.) After a careful review of both parties' arguments and briefs, and the record on appeal, the Court finds Lumetta's assertions in support of her contention that an OSC should have been filed to be groundless.

Here, both of Lumetta's contentions are simply barren statements made without any reference to persuasive legal citations.[7] At most, the three to four sentences of analysis provided by Lumetta in these sections amount to nothing more than Lumetta's own conclusory speculations. Thus, it is no surprise that the Court is unable to conclude that an OSC should have been issued. Accordingly, as the Court is not willing to act as counsel for Lumetta and furnish persuasive case law to support her assertions on appeal, the Court finds these arguments regarding consent and that an OSC is required by law to be waived.

---

[6] Discussed *supra* pp. 9-12, the Court also deems this argument waived pursuant to Federal Rule of Bankruptcy Procedure 8014(a)(8).

[7] The Court notes that Lumetta does provide a case citation in support of her argument that an OSC is required by law. But, even a cursory glance at this case shows that it does not reflect her argument on appeal and thus is inapplicable to the present matter.

9

*See Niko v. Foreman*, 144 Cal. App. 4th 344, 368 (2006) ("An appellate brief should contain a legal argument with citation of authorities on the points made. If none is furnished on a particular point, the court may treat it as waived, and pass it without consideration.") (internal quotation marks and citation omitted); *see also Mansell v. Bd. Of Admin. of the Pub. Emp. Ret. Sys.*, 30 Cal. App. 4th 539, 545 (1994) (waiving appellant's arguments as she failed to "brief the statutory issue on appeal . . . [and] presented no intelligible legal argument as to any other contentions"); *Cnty. Nat. Bank and Trust Co. of Santa Barbara v. Sheppard*, 136 Cal. App. 2d 205, 223 (1955) (holding that it is not the role of an appellate court to act as counsel for either party to an appeal); *Nilsson, Robbins, Dalgarn, Berliner, Carson & Wurst v. Louisiana Hydrolec*, 854 F.2d 1538, 1548 (9th Cir. 1988).

Furthermore, the Court notes that Lumetta's argument whether it was "proper for the Bankruptcy Court not to issue the [OSC] after finding a prima facie showing of a willful discharge violation under § 524(a)(2), since it "*could negatively affect professional reputations*[.]" is also waived. (Doc. No. 33 at 2.) Though Lumetta states that this is one of her issues presented on appeal, the Court finds no further reference to this argument in the remainder of her opening brief.

    ii. *Duty to Mitigate Damages*

Lumetta argues that the bankruptcy court cited no binding authority when it held that she was obligated to mitigate her damages. (Doc. No. 33 at 19-20.) Additionally, Lumetta asserts that there was nothing further she could do to mitigate her damages. (*Id.*) For the same reasons as above, this assertion is also waived.

Here, not only has Lumetta again failed to yield any legal citations to support her contentions, but the final flaw to her claim is that the bankruptcy court did in fact cite to binding authority that very clearly states that when a court awards reasonable attorney's fees that the court must consider whether those costs could have been mitigated. (Doc. No. 3-1 at 338-339.) Moreover, the Court highlights that the law is well established that in determining reasonable damages, the bankruptcy court "must examine whether the debtor could have mitigated the damages . . . ." *Roman (In re Roman)*, 283 B.R. 1, 12 (9th Cir.

B.A.P. 2002); *see also In re Hill*, 523 B.R. 704, 719 (Bankr. D. Mont. 2014) ("Under *Roman* the [c]ourt must examine whether the Debtor could have mitigated her damages . . . (2) what portion of those costs was reasonable, as opposed to costs that could have been mitigated."); *In re Risner*, 317 B.R. 830, 840 (Bankr. D. Idaho 2004). Accordingly, this stark half page argument without any reference to legal citations lacks foundation and is thus forfeited.[8]

        iii.    Discovery

Lastly, Lumetta argues that the bankruptcy court should have afforded her discovery pursuant to Bankruptcy Rule 9014.[9] (Doc. No. 33 at 19.) In opposition, AHA contends that the bankruptcy court was not required to allow discovery and that Judge Latham left the issue of discovery open. (Doc. No. 39 at 18-19.)

Ultimately, the Court finds this contention waived, but for dissimilar reasons than above. Here, though Lumetta cites to one ninth circuit case and to a local rule, her argument still fails as it does not cite to the record. *See In re S.C.*, 138 Cal. App. 4th 396, 406 (2006) ("When an appellant's brief makes no reference to the pages of the record where a point can be found . . . [the] court need not search through the record in an effort to discover the point purportedly made."). Thus, Lumetta has again placed the Court in the untenable position of having to provide evidence to support her arguments on appeal. However, this is not the Court's responsibility.

Furthermore, the Court highlights that the amendments to Rule 9014 states that the "discovery rules made applicable in adversary proceedings apply in contested matters unless the court directs otherwise." *See* Fed. R. Bankr. P. 9014 Advisory Committee Notes, 2002 Amendments. Based on the record, the Court finds Judge Latham "directed

---

[8] The Court reiterates that it is not this Court's function to serve as Lumetta's standby appellate counsel and provide her with a foundation of persuasive case law to support her arguments on appeal. *See Mansell*, 30 Cal. App. 4th at 545–46. Thus, in sum, the Court finds that Lumetta has failed to properly plead her arguments pursuant to FRBP 8014(a)(8.)

[9] Lumetta asserts that the only discovery that occurred before the bankruptcy court submitted the application for the OSC was the limited hearing taking the testimony of Ms. Call. (Doc. No. 33 at 19.)

otherwise." The Court notes that after counsel had finished presenting their arguments at Ms. Call's two hour testimony, Judge Latham asked counsel for both parties if any further discovery was needed. (Doc. No. 3-1 at 321; Doc. No. 43 at 73.) In response, counsel for Lumetta argued that it would be beneficial to have the dates of when Lumetta got her notice of foreclosure. (*Id*.) Judge Latham acknowledged these comments and then stated that he would be taking the "matter under submission" and that he would look "carefully at whether we have no technical violation or if we have an excused violation and whether that occasions any need for other discovery." (*Id*. at 340-341.) In response, Lumetta's counsel neither took issue with Judge Latham taking the matter under submission nor objected to his previous statements.

In sum, the Court finds that not only did Judge Latham directly ask both parties whether further discovery was needed, there is actually no evidence during Ms. Call's testimony that shows that Judge Latham forbade or disallowed any further discovery from occurring. Accordingly, this argument lacks merit and is also waived for failure to cite to the record.

## IV.  CONCLUSION[10]

Based on the foregoing, the Court **AFFIRMS** the bankruptcy court's rulings in all respects. The Court directs the Clerk of Court to **CLOSE** this case.

**IT IS SO ORDERED**.

Dated:  May 12, 2017

Hon. Anthony J. Battaglia
United States District Judge

---

[10] In Lumetta's opening brief, she lists six issues including issue three "[w]as it proper to excuse the willful violation of the discharge injunction even though Appellee was unable to comply with the discharge injunction as a direct result of its own wrongful conduct and fraud committed on the state court?" and issue five "[w]as it proper for the Bankruptcy Court to deny all civil contempt damages despite its finding of a willful discharge violation?" (Doc. No. 33 at 2.) The Court is unable to respond to these arguments as there is no further reference to these two issues in the remainder of Lumetta's opening brief.